**Howard L. BURKE, Appellant (Plaintiff below),**

v.

**WYOMING BANCORPORATION and A. H. Trautwein, Appellees (Defendants below).**

**No. 5102.**

Supreme Court of Wyoming.

June 27, 1979.

Paul J. Hickey, of Horiskey, Bagley & Hickey, Cheyenne, for appellant.

Jack B. Speight and Blair J. Trautwein, of Hathaway, Speight & Kunz, Cheyenne, for appellees.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

ROSE, Justice.

The issue on appeal is whether the trial judge, who sat without a jury, was correct

---

* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., Retired, was assigned, having been retained in active judicial service pursuant to Article 5, Section 5, Wyoming Constitution, and Section 5–1–106(f), W.S.1977, by order of this court entered on January 1, 1979.

in determining that there was no implied or express contract under which defendants-Wyoming Bancorporation and A. H. Trautwein owed a finder's fee to plaintiff-Howard L. Burke as the result of the ultimate acquisition by defendant corporation of the Stockgrowers Bank of Evanston.

■ We need consider only one of two alternative justifications advanced by the trial judge in support of his conclusion. The judge concluded that:

> ". . . At a minimum, it would seem that in order to raise an implied contract for finder's fee it must appear that the services have been performed under such circumstances as to give the recipient, Trautwein, reason to believe that they were not voluntary or gratuitous; . . ."

This is a fair statement of the law. *Bloomgarden v. Coyer*, 156 U.S.App.D.C. 109, 116, 479 F.2d 201, 208 (1973).

■ The trial judge concluded that the plaintiff acted as a volunteer. Plaintiff appeals this conclusion. The conclusion is sufficiently supported in the record, as a discussion of the evidence shows.

It is undisputed that the plaintiff proposed, in exchange for a finder's fee, to give defendant Trautwein information which could lead to acquisition of a Wyoming bank by the defendant corporation. It is also undisputed that plaintiff did furnish Trautwein with a lead concerning the possible acquisition of the Stockgrowers Bank of Evanston, which Trautwein pursued. This resulted in a meeting between Trautwein and Giles Florence and two of the latter's associates. Florence had an option to purchase the shares of the bank. Defendant corporation did eventually acquire the bank, but not until its first effort to purchase the bank was aborted and the bank sold to a third party. A disputed issue which we need not reach is whether the sale to the third party was a bona fide transaction or a sham transaction on behalf of defendant corporation.

The central controversy in this case is how Trautwein responded to plaintiff's offer to help Wyoming Bancorporation find a bank to purchase in exchange for plaintiff being paid a finder's fee.

Plaintiff's version of his proposition and Trautwein's response is:

"Q. What did you say to Mr. Trautwein?

"A. I asked Arnie [Trautwein] if he wanted to buy a Wyoming bank.

"Q. Did he make any response to you?

"A. He did. Arnie said there are none for sale. And I said, 'Well, there is one for sale and I have the principals with me that have an option to buy the bank.' Arnie wanted to know what bank it was at that time and I told him 'I'll—just a minute —' or words to that effect.

"Q. Was there any discussion that evening, Mr. Burke, about compensation or a fee to be paid you in the event Mr. Trautwein or Wyoming Bancorporation acquired this bank?

"A. There was. I told Arnie that if he bought one single share of stock in this bank, I wanted $10,000. If he bought controlling interest, I wanted 10 percent of the deal.

"Q. When you say 10 percent of the deal, do you mean 10 percent of the purchase price of the bank?

"A. That's correct.

"Q. What was Mr. Trautwein's response?

"A. Well, Arnie was quiet for a minute; then he kind of grunted and he said, 'Well, let me talk to these fellows.'

"Q. Did you later put them in contact on the telephone with him?

"A. I did immediately thereafter."

But Trautwein's version is different. It is:

"A. . . . I told him that Wybanco was very much interested in buying, acquiring banks. Several other questions, and I don't think the name of the bank was mentioned that night, it might have been, I don't believe so, it might have been.

And he stated, 'I want you to know I'm expecting to be reimbursed for a finder's fee on this.' I said, 'No, there is no way; Wybanco does not pay finder's fees; sellers pay finder's fees, not buyers.' The question again came up. I said, 'Not if there's a finder's fee.' He said, 'Will you come up anyway?' I said, 'No, not if there's a finder's fee.'

"Q. That was his statement?

"A. Yeah, 'come up anyway'. I said, 'I will come up if it is all understood.'

\*    \*    \*    \*    \*    \*

"Q. Now, you heard Mr. Burke say yesterday in testimony that when he told you about the finder's fee, there was a pause or a hesitation and you grunted and said, 'Okay,' and words to that effect; that you were implying or suggesting that you agreed with the finder's fee. Now, do you recall that in any way, shape or form?

"A. Well, no noises I made could have implied that I was okaying a finder's fee.

"Q. All right, did you tell him, 'Yes, Howard, we've got a deal, I'll pay you 10 percent or $10,000'?

"A. No, sir."

At the trial, Florence and his two associates testified that at the Casper meeting Trautwein acknowledged that Trautwein would pay a finder's fee; their testimony reveals a concern that Florence not be assessed a finder's fee. Trautwein denies this.

■ That conflicts of evidence must be resolved by the fact finder at the trial is so well established that this proposition does not warrant a repetition of authority in this opinion. There being adequate support for the trial judge's conclusion that Burke acted as a volunteer, we need not reach the other issues raised by appellant-plaintiff.

Affirmed.